## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Katrine Prela,

                Plaintiff,        Case No. 19-12469

v.                            Judith E. Levy
                                   United States District Judge

Schindler Elevator Corporation, *et al.*,

                             Mag. Judge David R. Grand

                Defendants.

_____/

## OPINION AND ORDER GRANTING THE MACY'S DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [26] AND *SUA SPONTE* GRANTING DEFENDANT SCHINDLER ELEVATOR CORPORATION SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(f)(1)

    This is a classic premises liability case: Plaintiff Katrine Prela was injured descending an escalator at a department store of Defendant Macy's Inc. and Defendant Macy's Retail Holdings, Inc. (hereinafter, jointly "the Macy's Defendants"). Before the Court is the Macy's

Defendants' motion for summary judgment.[1] (ECF No. 26.) The Court heard oral argument on April 8, 2021.

For the reasons set forth below, the Macy's Defendants' motion is GRANTED. Additionally, the Court gives notice of its intent to grant summary judgment to Defendant Schindler Elevator Corporation ("Defendant Schindler") under Federal Rule of Civil Procedure 56(f)(1).

## I.   Background

Defendants had previously entered into a contract for Defendant Schindler to perform escalator maintenance at the Macy's Defendants' store located at the Oakland Mall in Troy, Michigan. (ECF No. 44, PageID.533; ECF No. 4, PageID.26.) On September 4, 2017, at or around 6:00 pm, Plaintiff was a customer of the Macy's Defendants, located inside that same store. (ECF No. 44, PageID.532.) Plaintiff stepped onto

---

[1] The Court recognizes that ECF No. 26 is titled as a motion for summary judgment by Defendant Macy's Retail Holdings, Inc.; there is no mention of Defendant Macy's Inc. in the caption, title, or body of the motion for summary judgment itself. (*See* ECF No. 26.) Nevertheless, the Macy's Defendants filed a joint answer to the first amended complaint in this Court (ECF No. 4), have consistently been represented by the same counsel, and have jointly proceeded as such in the filings throughout this case. (*See, e.g.,* ECF Nos. 16, 19, 41.) Plaintiff, also, responded to ECF No. 26 as if it were brought by the Macy's Defendants and not solely Defendant Macy's Retail Holdings, Inc. (*See* ECF No. 36.) The parties similarly considered the motion to be filed by the Macy's Defendants at oral argument on the motion on April 8, 2021. Accordingly, the Court will treat ECF No. 26 as a motion for summary judgment filed on behalf of the Macy's Defendants.

an escalator (the second to first floor escalator, *see* ECF No. 36-7, PageID.503), which allegedly "had a broken, missing and/or malfunctioning comb plate[.]" (ECF No. 44, PageID.533.) Both parties agree that Plaintiff fell two or three steps from the bottom of the escalator as a result of a sudden and unexpected noise and jerking or lurching movement while she was riding the escalator. (ECF No. 26, PageID.10; ECF No. 26-3, PageID.163; ECF No. 36, PageID.251.) This fall is what is alleged to have injured Plaintiff's knee. (*Id.*) Plaintiff's son, Viktor Prela, alleged that there was "smoke" coming from the escalator from the portion of the escalator at the bottom where individuals exit. (ECF No. 36, PageID.252; ECF No. 36-2, PageID.320.) After falling, when Plaintiff reached the bottom of the escalator, Plaintiff's dress was caught in the escalator's comb plate[2] and had to be pulled out. (ECF No. 26, PageID.130; ECF No. 36, PageID.251.) A picture of the broken comb plate was taken after the dress was freed and depicts comb fingers broken off from the comb plate. (ECF No. 36, PageID.243.)

---

[2] The comb plate is located at both ends of an escalator and is where the moving steps meet the fixed landing platform attached to the floor. A comb plate is composed of comb teeth (i.e., the elongated edge pieces of the plate that interlock with each other), which are also referred to as comb fingers.

According to the complaint, Plaintiff "sustained injuries after being caused [sic] to fall as a result of a malfunctioning escalator of the premises." (ECF No. 44, PageID.533.) Specifically, Plaintiff's injuries are alleged to include: "neck, low back, left knee lateral meniscus tear, left ankle, gait disorder, adjustment disorder; post-traumatic stress disorder; psychological adjustment issues associated with her fall; adjustment disorder with mixed emotional features; permanent residual impairment; and injuries to other parts of her body[.]" (*Id.* at PageID.536.) Plaintiff claims to have incurred economic damages in the form of lost wages, impact on her earning capacity, medical expenses, and other unspecified economic losses. (*Id.* at PageID.537.)

On July 22, 2019, Plaintiff filed a complaint in Oakland Circuit Court against Defendants Macy's Inc. and Schindler, seeking relief for (1) negligence against Defendant Macy's Inc.; and (2) negligence against Defendant Schindler. (*See* ECF No. 1-2.) Defendant Schindler was allegedly served with the complaint via certified mail on or about July 23, 2019. (*See* ECF No. 1, PageID.2.) Plaintiff filed a first amended complaint on July 25, 2019, adding Defendant Macy's Retail Holdings, Inc. as a defendant. (*See* ECF No. 44.)

4

Within thirty days of service, on August 22, 2019, Defendant Schindler filed a notice of removal[3] to this Court, alleging jurisdiction based on diversity pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1, PageID.2.) On September 4, 2019,[4] the Macy's Defendants filed an answer to the complaint. (ECF No. 4.)

On December 15, 2020, the Macy's Defendants filed the motion for summary judgment at issue, seeking summary judgment as to Plaintiff's first amended complaint. (ECF No. 26.) On January 30, 2021, Plaintiff

---

[3] Defendant Schindler's August 22, 2019 notice of removal improperly attached solely the initial July 22, 2019 complaint filed in Oakland County Circuit Court, as opposed to the first amended complaint. However, the first amended complaint was filed in Oakland County Circuit Court on July 25, 2019—*prior* to removal to this Court. "Upon removal, the district court must take up the case where the State court left it off. Because this Court inherited the entire case upon removal, we look to the state court docket prior to removal to determine the posture of the case in federal court." *Masjid Malcom Shabazz House of Worship, Inc. v. City of Inkster, Michigan*, No. 19-CV-11823, 2019 WL 6037652, at *3 (E.D. Mich. Nov. 14, 2019) (internal citations and quotation marks omitted). Because the first amended complaint was filed before removal, the posture of the case involved the addition of Defendant Macy's Retail Holdings, Inc. Defendant Schindler filed the first amended complaint as an additional exhibit to its notice of removal on April 12, 2021 (ECF No. 44) and the Court subsequently entered an order amending the case caption to add Defendant Macy's Retail Holdings, Inc. as a defendant. (ECF No. 46.)

[4] This same day, the Macy's Defendants filed a crossclaim against Defendant Schindler. (ECF No. 5.) However, in response to the Court's order seeking supplemental briefing regarding whether there was a conflict of interest with regard to Defendant Schindler and the Macy's Defendants being jointly represented by Clark Hill PLC despite being adversarial (ECF No. 40), the Macy's Defendants withdrew its crossclaim against Defendant Schindler. (ECF No. 41.)

filed a response. (ECF No. 36.) The Macy's Defendants have not yet filed a reply, and the time allotted to do so has expired.

On April 8, 2021, a hearing was held on the Macy's Defendants' motion for summary judgment. At that hearing, the Court extended the deadline for Defendant Schindler to file a dispositive motion to May 13, 2021. Defendant Schindler has not yet filed a dispositive motion, and the time allotted to do so has expired.

## II.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

Additionally, as a case arising under federal diversity jurisdiction, the laws of the forum state apply. *Kilgore v. Carson Pirie Holdings, Inc.*, 205 F. App'x 367, 372–73 (6th Cir. 2006). "If the state Supreme Court has not yet addressed the issue presented, this court must predict how it would rule, by looking to 'all available data,' including state appellate decisions." *Ramadan v. Home Depot, Inc.*, No. 18-12765, 2020 WL 7042990, at *4 (E.D. Mich. Nov. 30, 2020).

## III.   Analysis

The Macy's Defendants argue, in effect, that there are two distinct reasons why summary judgment is warranted. First, the Macy's Defendants claim that Plaintiff cannot identify or otherwise establish the existence of a defect which caused or contributed to the cause of the incident in question beyond mere speculation. (ECF No. 26, PageID.143.) Second, the Macy's Defendants argue that, even assuming Plaintiff fell as a result of a dangerous condition with the escalator, there is no evidence that the Macy's Defendants had notice of an alleged defect of the escalator, as required for Plaintiff to a maintain a premises liability claim. (*Id*.) For the reasons set forth below, the Macy's Defendants are correct.

Additionally, based upon the Court's conclusion that Plaintiff cannot identify or otherwise establish the existence of a defect in the escalator, the Court gives notice of its intent to *sua sponte* grant summary judgment to Defendant Schindler.

## A. Plaintiff's claim is one of premises liability—not negligence

As a preliminary matter, the parties here appear to litigate this claim as if it is one of premises liability—despite the complaint's labeling of this claim as one of negligence. Premises liability claims are not synonymous with ordinary negligence claims: "Michigan law distinguishes between a claim of ordinary negligence and a claim premised on a condition of the land." *Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, No. 351813, 2021 WL 650475, at *3 (Mich. Ct. App. Feb. 18, 2021); *see also Wheeler v. Central Mich. Inns, Inc.*, 292 Mich. App. 300, 304 (2011) (evaluating whether a plaintiff's cause of action sounded in ordinary negligence or premises liability in order to determine whether the open and obvious danger doctrine applied).

While Plaintiff's complaint states that this is an action for negligence, the Court is not bound by the label attached to Plaintiff's claim. *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1, 13 (2018).

8

"Whether the gravamen of an action sounds in negligence or in premises liability is determined by considering the plaintiff's complaint as a whole, regardless of the labels attached to the allegations by the plaintiff." *Jeffrey-Moise*, 2021 WL 650475, at *3. Courts will examine the language of the complaint to determine the nature of a plaintiff's claim. *See Wheeler*, 292 Mich. App. at 304 ("Terms such as 'premises possessor' and 'dangerous condition on the land' relate to the elements of a premises liability, rather than ordinary negligence, claim."). If "plaintiff's claim is based on defendant's duty as the possessor of the land on which she fell, and not upon defendant's ability to conform to a particular standard of care, [then] we treat plaintiff's claim as one of premises liability." *Jeffrey-Moise*, 2021 WL 650475, at *3. Even if the defendant "may have created the condition on the land, that does not transform the premises liability action into one alleging ordinary negligence." *Jahnke v. Allen*, 308 Mich. App. 472, 476 (2014); *see also Jeffrey-Moise*, 2021 WL 650475, at *3 ("Although plaintiff alleges that the dangerous condition was created by the actions, or the failure to act, of defendant or its employees, that allegation does not transform a premises liability action into one of ordinary negligence.").

Here, Plaintiff's complaint indicates that Plaintiff was an "invitee on the premises," and that the Macy's Defendants "failed to maintain the elevator [sic] in a reasonably safe condition[.]" (ECF No. 44, PageID.533.) Plaintiff also argues in turn that the Macy's Defendants failed to guard, fix, and warn of possible dangerous conditions relating to the escalator (largely regarding the comb plate), which can constitute a breach of the duty of care as possessor of the land on which Plaintiff fell. (*Id.* at PageID.533–534.) While Plaintiff argues that the Macy's Defendants "w[ere] negligent" in causing the subject incident for a variety of reasons (*id.*), Plaintiff specifically argues that "[the Macy's Defendants] knew or should have known that the comb plate was a hazard." (*Id.* at PageID.534.) While Plaintiff's first amended complaint includes terms that relate to both negligence and premises liability theories, Plaintiff's claim as pleaded predominantly focuses on the Macy's Defendants' alleged failure to maintain the premises in a reasonably safe condition based on their role as the possessors of the land on which she fell. *See Jeffrey-Moise*, 2021 WL 650475, at *3. Furthermore, both the Macy's Defendants' motion for summary judgment and Plaintiff's response discusses the liability of premises owners to invitees (*see* ECF No. 26,

10

PageID.136; ECF No. 36, PageID.260), and do not address ordinary negligence. Accordingly, Plaintiff's claim is one of premises liability, and not ordinary negligence.

### B. Plaintiff failed to raise a genuine dispute of material fact regarding the existence of a defect which caused or contributed to the cause of the incident

Neither party disputes that Plaintiff was a business invitee at the Macy's Defendants' store at the time of the incident. "A possessor of land is not an absolute insurer of the safety of an invitee." *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 693 (2012) (citation and quotation marks omitted). "In order to successfully advance such a claim, an invitee must show that the premises owner breached its duty to the invitee and that the breach constituted the proximate cause of damages suffered by the invitee." *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016).

The parties largely agree on the basic timeline of events leading to Plaintiff's injury: Plaintiff fell on the escalator when she was two or three steps from the bottom, injuring her knee. At the bottom of the escalator, her skirt was caught in the comb plate. According to the Macy's Defendants, Plaintiff has failed to identify an alleged defect that caused

Plaintiff to fall and injure her knee *before* her skirt was caught in the comb plate. (ECF No. 26, PageID.122–123.)[5] The Macy's Defendants point to Plaintiff's complaint to argue that the alleged defect as identified by Plaintiff was a defective, malfunctioning comb plate. (*Id.* at PageID.122.) However, the Macy's Defendants contend that the comb plate "had nothing to do with the Plaintiff's fall and related injuries." (*Id.*) Rather, the comb plate was broken as a result of Plaintiff's dress becoming caught and her family members' resultant pulling of the dress from the comb plate. (*Id.* at PageID.142.) As indicated by a deposition of Arnold Kreft, a mechanic at Defendant Schindler, inspection of the

---

[5] The Macy's Defendants also contend that Plaintiff has conclusively admitted that the comb plate was not a proximate cause of Plaintiff's injury. Specifically, they argue that by failing to respond to the Macy's Defendants' Requests for Admission ("RFAs") within thirty days of service (*see* ECF 26-7), as prescribed by Federal Rule of Civil Procedure 36(a)(3), Plaintiff admitted that the condition of the comb plate/comb teeth of the escalator did not cause or contribute to the cause of the Plaintiff's fall and injury she claims to have sustained on the escalator. (ECF No. 26, PageID.134; ECF No. 26-7.) In response, Plaintiff claims (1) that the RFAs were nonsensical because the requests referred to a "combed plate[,]" which does not exist; (2) that Plaintiff timely submitted the responses to the RFAs; and (3) even if these RFAs were deemed admitted, summary judgment would nevertheless be improper for the Macy's Defendants because the comb plate was not the defect at issue. (ECF No. 36, PageID.262.) However, as set forth below, the Court finds that Plaintiff failed to raise a genuine dispute of material fact regarding the existence of a defect which caused or contributed to the cause of the incident. Accordingly, the Court need not consider whether Plaintiff responded to the RFAs in the allotted timeframe to do so under Rule 36(b) or whether deeming the RFAs as admitted would necessitate the granting of summary judgment to the Macy's Defendants on alternate grounds.

escalator the day after this incident revealed only one problem with the escalator: the broken comb plate. (*Id*. at PageID.134–135; ECF No. 27, PageID.226–227.) The escalator allegedly otherwise worked properly. (*Id*.) According to the Macy's Defendants, Plaintiff has offered no evidence as to what caused the elevator to allegedly shake or cause Plaintiff to fall. (ECF No. 26, PageID.141.) As a result, Plaintiff has not established how the dangerous condition was created, how long it existed, or whether the Macy's Defendants had knowledge of the condition. (*Id*. at PageID.142.)

In response, Plaintiff argues that there are disputed issues of material fact such that summary judgment is improper. Plaintiff appears to contend that the comb plate and comb fingers were not themselves the defect that caused the escalator to lurch. Rather, Plaintiff claims to have identified a defect in the escalator at issue—misalignment or maladjustment (of what exactly is generally unspecified, but possibly the rotating steps or the step chain) resulting from improper repairs—that allegedly caused the escalator's lurch that led to Plaintiff's injury. (*See* ECF No. 36, PageID.244; ECF No. 36-7, PageID.505.) The comb plate and comb fingers were, instead, a part of the causal chain of events: "The

misalignment of the escalator as described by Plaintiff's expert, Patrick Carrajat, caused the comb fingers to break before the incident occurred, which explains why the escalator started smoking and jerked, causing the Plaintiff to fall." (ECF No. 36, PageID.244.) And further: The "improper maintenance and repair of the escalator to misalign [sic], causing the piece of the comb plate to break and lodged itself in the bottom step." (*Id.* at PageID.243.) Thus, Plaintiff contends that the comb plate was not initially broken on the day of the incident, but that somehow misalignment of the steps caused the comb plate to break and become lodged at the bottom of the escalator, which led to the escalator's jerking movement.

Ultimately, as set forth below, Plaintiff has failed to outline a defect that purportedly caused the lurching movement responsible for Plaintiff's injuries.

### i.   **Plaintiff did not offer evidence beyond speculation that the escalator was misaligned.**

Plaintiff has offered no evidence that the escalator was misaligned or that any misalignment was responsible for the broken comb plate observed at the scene. Plaintiff and her son, Viktor Prela, both testified at their depositions as to a loud sound and smoke; Plaintiff felt the

escalator jerk as she descended to the first floor, whereas Viktor saw the movement from where he was standing at the bottom of the first floor. Plaintiff claims that "[Viktor] Prela observed 'smoke' coming from the escalator from the exit part, where the comb plate is located, indicating there was an escalator misalignment there with the rotating steps that broke the comb[ ]plate." (ECF No. 36, PageID.252.) However, Viktor's testimony solely indicated that smoke was present, and did not speak at all to visible or detected misalignment. (ECF No. 36-2, PageID.320.) Viktor, who is not alleged to be an expert in escalators, also admitted that he did not see the comb plate until after the incident and after his sister helped pull Plaintiff's dress out, at which point the comb plate piece was stuck in a vertical position. (*Id.* at PageID.352–353, 355, 365.) Viktor's testimony does not establish that there was any misalignment in the escalator.

Nor did the mechanics who regularly worked on the Macy's Defendants' escalators indicate otherwise. One of Defendant Schindler's escalator mechanics, Arnold Kreft, testified that he responded to a work order made by the Macy's Defendants on September 5 (i.e., the day after the incident). (ECF No. 36-4, PageID.465.) Based on the work description

15

made by Kreft after he responded that day, Kreft testified that he must have had to reset a switch (which could have been either a chain switch or a skirt switch, both of which are types of safety switches) and that he found a piece of broken comb plate. (*Id.* at PageID.467–468.) Kreft testified that it was "possible" that hypothetically a piece of a comb plate or comb tooth could get lodged, activating a chain switch and thus stopping an escalator. (*Id.* at PageID.467.) This could similarly have occurred with a skirt switch, were the comb plate piece to have been stuck on the side of a step. (*Id.* at PageID.472.) However, in the instances where an escalator stopped from the safety switches, "[n]ormally an escalator doesn't abruptly stop, it glides a little bit, a couple steps." (*Id.* at PageID.467, 473.) Nor would it make a loud noise. (*Id.* at PageID.473.) And, based on his work description report from the day after the incident, Kreft testified that there was likely nothing else that he found to be broken or in need of repair with the escalator at issue beyond the broken comb plate. (*Id.* at PageID.473–474.) Accordingly, there is no evidence that Kreft found any misalignment in the steps or in the chains when making a repair the day immediately following the incident.

16

Another of Defendant Schindler's escalator mechanics, Robert Hopkins, testified he did not recall exactly what he did when he reported to the Macy's Defendants' store on September 11 (a few days after the incident), but that he typically would record in detail the actual work performed on escalators in his work description records (ECF No. 36-3, PageID.429) and that on September 11 he solely "[p]erformed preventative maintenance, including routine visual inspection of equipment, [and] performed routine escalator inspection and maintenance." (*Id.* at PageID.428.) Routine preventative maintenance could include "oiling the chains if they were dry, if there was a broken comb finger." (*Id.* at PageID.429.) Accordingly, there is no evidence that Hopkins found any misalignment in the steps or in the chains in the days following the incident.

Ultimately, Plaintiff largely relies on the expert testimony of Patrick Carrajat, an alleged escalator and elevator expert (ECF No. 36-7), for the contention that the broken comb plate must have been caused by the maladjustment of the escalator. (ECF No. 36, PageID.261–262; ECF No. 36-7, PageID.506.) Carrajat's report focuses on "[c]ombfinger entrapments" (such as the entrapment of Plaintiff's dress in the

17

escalator) and lists three separate reasons why such entrapments can occur:

(1) "combfingers do not penetrate into the incoming steps sufficiently to comb out and deflect any body part or other object entering the area";

(2) "the steps come into the combfinger area too low allowing an excess space between the step and combfinger, . . . [which] is caused by either excessively worn step rollers or excessively worn roller tracks"; and

(3) missing comb fingers or missing teeth on a comb finger,[6] for which "there is only one major cause[:] . . . skewed steps caused by improper adjustment of the step chain allowing one chain to 'lead' the other by a small amount."

(ECF No. 36-7, PageID.505.) Carrajat ultimately concludes that "the entrapment of [Plaintiff's] dress in this instance occurred as a result of the negligence of [the] Macy's [Defendants] and [Defendant] Schindler to properly maintain, adjust and repair the subject escalator." (*Id.* at

---

6 Carrajat in this instance appears to use comb finger to refer to part of a comb plate and comb teeth to refer to the elongated pieces of metal attached to the comb plate.

18

PageID.506.) Carrajat based his opinion on (1) the photo taken after the incident "showing that the front half of the comb finger was broken off entirely"; (2) Viktor's alleged testimony "that the broken segment was standing upright with the pointed edge of the comb finger in the vertical position" and "that [the] upright segment caught his mother's dress causing her fall and that it wedged between the steps and the landing plate"; and (3) records made by Defendant Schindler indicating that escalators at the Macy's Defendants' store previously had instances of broken comb fingers. (*Id.* at PageID.504–506.) Carrajat does not mention the escalator having shook and made a large bang, let alone make conclusions regarding the cause of such jerking movement.

Plaintiff's reliance on Carrajat is improper for several reasons. First, Carrajat never mentions the bang or jerking movement of the escalator, and instead interpreted Viktor's testimony to indicate that Plaintiff fell because an upright segment of a broken comb plate, wedged between the steps and the landing plate, caught her dress. (*Id.*) This clearly misinterprets Viktor's testimony and the parties' agreement that the fall arose from the jerking movement. Accordingly, none of Carrajat's conclusions regarding the Macy's Defendants' alleged negligence actually

relies upon the facts as they occurred. Second, Plaintiff appears to engage in a backwards extrapolation here to conclude that the presence of a broken comb plate indicated the escalator's steps were skewed or that the step chain was misadjusted. Carrajat indicates that misaligned steps are the *major* cause for frequently broken comb fingers but does not suggest this is the *only cause*. Nor does he conclude based on review of the Macy's Defendants' records and other evidence provided that there were likely misaligned steps *in the escalator at issue.*

There is no evidence that the Macy's Defendants' escalator was misaligned on the day of the incident. Accordingly, there is no genuine dispute of fact that there was a defect in the escalator as necessary for Plaintiff's premises liability claim to survive summary judgment.

### ii.    Plaintiff did not offer evidence beyond speculation that any misalignment, even were it to have existed, could have caused the escalator to shake.

Even assuming there was a misalignment of the steps or chains as suggested by Plaintiff, there are insufficient grounds for a reasonable juror to conclude that any theoretical misalignment caused Plaintiff's injuries. "In a Michigan premises-liability action for negligence, a plaintiff must provide evidence of a defect in order to establish factual

and proximate causation for the injury." *DeBusscher v. Sam's E., Inc.*, 505 F.3d 475, 481 (6th Cir. 2007). Michigan's causation requirement in premises liability cases was examined in detail in *Taylor v. PetSmart, Inc.*, No. 17-CV-10151, 2018 WL 398445, at *3 (E.D. Mich. Jan. 12, 2018):

> A premises liability claim requires proof of both cause in fact and proximate cause. *See Skinner v. Square D Co.*, 445 Mich. 153, [162] (1994). To show cause in fact, a plaintiff must demonstrate "that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* (citing Prosser & Keeton, Torts (5th ed.), § 41, p. 266). Conversely, proximate cause "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (citing *Moning v. Alfono*, 400 Mich. 425, [439] (1977); *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, [586] n.13 (1994)). "Although causation is sometimes a jury question, [a] district court may decide causation as a matter of law if the plaintiff presents insufficient evidence to 'support a reasonable inference' of causation." *Demo v. Red Roof Inns, Inc.*, 274 [F. App'x] 477, 478 (6th Cir. 2008) (citations omitted). Speculation alone is insufficient to raise a genuine dispute of material fact regarding causation and a defendant's negligence. *Drews v. Am. Airlines, Inc.*, 68 F. Supp.3d 734, 742 (E.D. Mich. 2014) (noting that "'[t]he mere occurrence of plaintiff's fall is not enough to raise an inference of negligence on the part of the defendant.'" (quoting *Stefan v. White*, 76 Mich. App. 654, [661] (1977))).

*Taylor*, 2018 WL 398445, at *3. Additionally, the following passage quoted in *Skinner*, 445 Mich. at 164, helps to distinguish between a reasonable inference and speculation:

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

*Skinner*, 445 Mich. at 164 (quoting *Kaminski v. Grand Trunk W R Co.*, 347 Mich. 417, 422 (1956)). Ultimately, "a plaintiff cannot only present one theory of the alleged circumstances that caused the accident if he is unable to sufficiently eliminate other theories 'to take the case out of the realm of conjecture.'" *Ramadan*, 2020 WL 7042990, at *8 (quoting *Guthre v. Lowe's Home Ctrs., Inc.*, 204 F. App'x 524, 527 (6th Cir. 2006)).

Here, Plaintiff has only presented conjecture regarding the causal link with her theory of a defect—a misaligned escalator leading to a broken comb plate, that is then lodged in the steps. Only one shred of evidence in the record even theoretically suggests this situation is possible in the first place: When asked directly by Plaintiff whether the comb fingers and comb plate depicted in the photo taken by Viktor Prela could cause a loud noise and cause the step to move back were it to get

22

lodged in between the groves of the steps, Hopkins stated it "could." (*Id.* at PageID.443.)

However, most of the evidence is without selective application to Plaintiff's theory. No evidence presented demonstrates that the broken piece of the comb plate found on the scene was ever lodged between the steps of the escalator or the end of the escalator itself. Kreft, one of the escalator mechanics, testified that he found no evidence in his inspection the day after the incident that would support or explain Plaintiff's depiction of the loud noise, smoke, and jerking leading to her fall. (ECF No. 36-4, PageID.474.) The other escalator mechanic, Hopkins, indicated that he had never seen a comb plate snapped off before in the manner that was depicted in the photograph. (ECF No. 36-3, PageID.473.) And, when Hopkins was described the situation as allegedly experienced by Plaintiff—a loud noise leading to a burning smell and shaking—he indicated that he "would have no know [sic] if there's something wrong with the unit. I don't know what caused that" (*id.* at PageID.440), that he was not aware of this happening before at the Macy's Defendants' store (*id.* at PageID.439), and that he could not say even with his knowledge of escalators as to what possibly could have caused that. (*Id.*)

Furthermore, the expert report of Plaintiff's escalator expert Carrajat does not even mention the fact that the escalator shook, let alone conclude that any misalignment in the escalator could have led to, or did lead to, to a lodged broken comb plate. Carrajat did opine that "the entrapment of a passengers [sic] clothing does not occur on a properly maintained and adjusted escalator absent negligence by the parties responsible for its proper maintenance[.]" (ECF No. 36-7, PageID.506.) Nevertheless, this statement does not affect the determination before the Court. The parties agree that the entrapment of Plaintiff's clothing occurred *after* her injury: even if it was a negligent act by the Macy's Defendants to have this escalator that was not properly maintained such that Plaintiff's clothing could get stuck, Plaintiff does not claim to have been injured as a result of the entrapped dress.

Perhaps the only circumstantial evidence is the existence of the broken comb plate itself. Nevertheless, it is equally possible based on evidence presented that the comb plate break occurred as a result of the dress being pulled up after being caught. Indeed, Hopkins stated that the damage depicted to the comb plate and comb fingers in the photograph could have been caused by the skirt getting caught in it and damaging

24

the comb fingers, as opposed to that being the condition of the comb fingers right before the incident. (ECF No. 36-3, PageID.437.) And, while Plaintiff points to a history of broken comb fingers and comb teeth at the Macy's Defendants' store as supposed evidence of the misaligned escalator, Hopkins testified that the comb fingers at the Macy's Defendants' escalators would frequently need to be replaced because comb fingers break over time due to objects becoming caught or due to wear and tear. (*Id*. at PageID.442–443.)

Accordingly, examining all of the evidence in the light most favorable to Plaintiff, Plaintiff is "unable to sufficiently eliminate other theories 'to take the case out of the realm of conjecture.'" *Ramadan*, 2020 WL 7042990, at *8.

## C. Plaintiff has failed to demonstrate that the Macy's Defendants had actual or constructive notice of any purported defect through either previous incidents involving the escalator or through the expiration of the escalator's useful life.

Even if there was a misalignment issue with the escalator that constituted a defect, Plaintiff has not offered evidence to create a genuine dispute of fact that the Macy's Defendants had actual or constructive notice of such misalignment. "A premises owner breaches its duty of care

25

when it 'knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.'" *Lowrey*, 500 Mich. at 1 (quoting *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012)). "In other words, a plaintiff must prove that the defendant had actual or constructive notice of the alleged dangerous condition." *Ramadan*, 2020 WL 7042990, at *7. A defendant had constructive notice if "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich. at 11–12.

"Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno*, 326 Mich. App. at 18 (quoting *Pippin v. Atallah*, 245 Mich. App. 136, 145 n.2 (2001)). "The Defendant does not have to present evidence of routine or reasonable inspection in order to prove that it did not have notice." *Ramadan*, 2020 WL 7042990, at *7. Rather, a defendant can show that it is entitled to summary judgment "by demonstrating that [the] plaintiff failed to present sufficient evidence of notice." *Id.*

Here, Plaintiff argues that there was actual or constructive notice based on several prior incidents involving the escalator at issue. Plaintiff specifically points to three prior incidents—on May 27, 2017, July 8, 2017, and September 3, 2017—of items (apparently customer's clothing) getting caught in the escalator at issue. (ECF No. 36, PageID.254.) Carrajat notes that there were "accidents involving entrapments of clothing on twelve occasions between September 2016 and September 2017" as well as "nine (9) entries referencing emergency calls[7] for the subject escalator between September 2016 and September 2017." (ECF No. 36-7, PageID.504.)  However, as Plaintiff's own expert notes, comb finger entrapments could occur as a result of three possible defects, including that the comb fingers did not penetrate incoming steps sufficiently; there was an excess space caused by excessively worn step rollers or roller tracks; or that misaligned steps or chains broke comb fingers. (ECF No. 36-7, PageID.505.) These previous incidents may have elucidated another, unrelated defect (e.g., excessively worn step rollers),

---

[7] While no detail is provided as to what led to these nine emergencies calls, the context suggests these calls resulted from clothing entrapment situations.

and do not necessarily convey actual or constructive notice of the allegedly misaligned steps.

Plaintiff also points to the Macy's Defendants' need to replace broken comb fingers in the escalator approximately quarterly as constructive notice there was "an adjustment problem" in the escalator. (ECF No. 36, PageID.254.) However, the fact of broken comb fingers alone does not suggest that the Macy's Defendants had notice of any greater misalignment defect. Again, while Plaintiff's expert Carrajat indicates that misalignment is a major cause of broken comb fingers (ECF No. 36-7, PageID.505), there are *other* causes—including "wear" and customers "routinely" dropping items like "a penny, a quarter, a dime" that lead to a comb finger break. (ECF No. 36-3, PageID.430.) While the Macy's Defendants may have had notice that there was a frequent issue with broken comb fingers, this is a separate question from whether the Macy's Defendants had notice of the alleged misalignment defect suggested by Plaintiff.

Additionally, Plaintiff's expert Carrajat indicates in his expert report that, based on the time of the escalator's installation and a presumed estimate of how often this escalator was used in a week, "[t]his

escalator should have been replaced by 1988 at the latest." (ECF No. 36-7, PageID.504.) Plaintiff argues that "[the Macy's Defendants] had to have actual notice of the old expired useful life escalator, which was out of adjustment because broken teeth (comb fingers) on the comb plate, and according to the Schindler technician should have been replaced before [Plaintiff]'s injury." (ECF No. 36, PageID.263.) Plaintiff does not provide any precedent, nor can the Court find any, suggesting that the age of the escalator alone would be sufficient to provide actual or constructive notice of its alleged misalignment. The notice requirement concerns notice of a *particular* hazard: A defendant had constructive notice if "*the hazard* was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich. at 11–12 (emphasis added). There is no evidence presented to indicate that escalators of this brand, this age, and this degree of use will have misalignment issues such that the Macy's Defendants should have known of the defect based on the escalator's age alone.

Finally, the known facts of this incident—the smoking, the loud noise, and the shaking escalator—appear to have been completely novel to the mechanics who worked on the Macy's Defendants and many other

escalators. As stated previously, Hopkins (the main escalator mechanic for the Macy's Defendants) had never seen a comb plate damaged like this one, could not even theorize as to possible causes of the shaking escalator, and was not aware of this happening before at the Macy's Defendants' store. (ECF No. 36-3, PageID.439–440, 473.) Even if Plaintiff's theory of defect and causation accurately depicts what happened, Plaintiff has not raised a genuine dispute of fact as to whether the Macy's Defendants should have discovered this condition.

### D. Plaintiff's failure to raise a genuine dispute of fact on the existence of a defect that caused the subject incident justifies the *sua sponte* granting of summary judgment for Defendant Schindler as well.

Plaintiff's negligence claim against Defendant Schindler (i.e., Count II of the first amended complaint) is based on the same incident underlying Plaintiff's claim against the Macy's Defendants. (See ECF No. 44, PageID.535–537.) Indeed, Count II contains nearly the exact same allegations against Defendant Schindler as those in Count I against the Macy's Defendants (*see id.* at PageID.533–535) but Count II indicates that Defendant Schindler was subject to a heightened duty of care because "[t]he escalator is a common carrier of persons" (*id.* at PageID.535). However, the first amended complaint delineates the

Macy's Defendants as the entities in possession and control of the premises as contrasted to Defendant Schindler as the entity contractually obligated to maintain the escalator at issue. (*Id.* at PageID.532–533.) Accordingly, Count II of the first amended complaint is based upon an allegation of negligence. *Contrast to Jeffrey-Moise*, 2021 WL 650475, at *3 ("Because plaintiff's claim is based on defendant's duty as the possessor of the land on which she fell, and not upon defendant's ability to conform to a particular standard of care, we treat plaintiff's claim as one of premises liability.").

"Unlike a claim of premises liability, a claim of ordinary negligence is based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Id.* "To establish a prima facie case of negligence, a plaintiff must demonstrate that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of those damages." *Id.*

Because Plaintiff failed to raise a genuine dispute of fact on the existence of a defect on the escalator at issue, Plaintiff has also failed to demonstrate that Defendant Schindler breached any theoretical duty to

31

Plaintiff to maintain the escalator in a reasonably safe condition or to otherwise warn Plaintiff of any hazards. Recognizing this issue at the hearing on the Macy's Defendants' motion for summary judgment, the Court gave notice at that time to Plaintiff that the Court was prepared to grant summary judgment to Defendant Schindler. Additionally, the Court extended the deadline for Defendant Schindler to file a dispositive motion to May 13, 2021. Defendant Schindler neglected to do so. Nevertheless, the Court is prepared to grant summary judgment to Defendant Schindler with respect to the negligence claim against it (i.e., Count II). *See* Fed. R. Civ. Pro. 56(f)(1).

## IV.   Conclusion

For the reasons set forth above, the Court **GRANTS** the Macy's Defendants' motion for summary judgment. (ECF No. 26.) It is further **ORDERED** that Count I of Plaintiff's first amended complaint is **DISMISSED WITH PREJUDICE**.

The Court gives notice of its intent to **GRANT** summary judgment to Defendant Schindler under Federal Rule of Civil Procedure 56(f)(1). Plaintiff may file a memorandum, of no more than ten pages and no later than October 15, 2021, setting forth any new arguments as to why

Defendant Schindler is not entitled to such relief. Plaintiff may file a responsive memorandum of no more than ten pages no later than October 29, 2021.

IT IS SO ORDERED.

Dated: September 29, 2021          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2021.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager